<u>**FOR PUBLICATION**</u>

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

_____
                                 :

NATHAN SASONOV,                :

                                 :

         Petitioner,           :                    Civil Action No. 07-2771 (JAG)

                                 :

                 v.            :                     **OPINION**

                                 :

UNITES STATES OF AMERICA,   :

                                 :

         Respondent.        :
_____:

<u>**APPEARANCES**</u>:

Thomas E. Moseley, Esq.
Law Office of Thomas Moseley
One Gateway Center
Suite 2600
Newark, NJ 07102

John W. Mitchell, Esq.
433 Greenwich Street
Suite 6E
New York, NY 10013
Attorneys for Petitioner Nathan Sasonov

Joyce M. Malliet, Esq.
Assistant United States Attorney
United States Attorney's Office
970 Broad Street
Room 702
Newark, NJ 07102
Attorney for Respondent United States of America

<u>**GREENAWAY, JR., U.S.D.J.**</u>

      This matter comes before this Court on Nathan Sasonov's ("Petitioner") Petition seeking

a writ of habeas corpus, pursuant to 28 U.S.C. § 2255 (2008).  Petitioner contends that his trial

counsel's performance fell so far below accepted standards of professional conduct that he was deprived of his Sixth Amendment right to counsel.  As a result of trial counsel's ineffective assistance, Petitioner argues that his guilty plea was involuntary and should be vacated.  For the reasons set forth below, this Court grants the Petition and vacates the guilty plea.

## I.  FACTUAL BACKGROUND

On July 27, 2005, Petitioner Nathan Sasonov, a citizen of Uzbekistan and a permanent resident of the United States,[1] was arrested and charged with one count of conspiracy to violate the laws of the United States, pursuant to 18 U.S.C. § 371 (1994), and one count of bribery of a public official, pursuant to 18 U.S.C § 201(b)(1) (1994).  (Pet'r Decl. ¶¶ 2, 9, 20; see also Pet'r Decl. Ex. A.)  Petitioner's arrest arose from activity related to his shipping company, Statewide Transportation, located in Linden, New Jersey.  (Id. at Ex. A.)  On December 12, 2005, Petitioner was indicted on the same two charges.  (Id. at ¶ 3.)

Shortly after his arrest, Petitioner retained Samuel Racer, Esq. to represent him.  (Id. at ¶ 10.)  During their initial meeting in July of 2005, Petitioner explained his understanding of the charges against him, and Mr. Racer told Petitioner "not to worry, this is not a big deal."  (Id.)  Afterwards, Petitioner requested that he and Mr. Racer meet again to discuss the status of the case.  (Id. at ¶ 11.)  Mr. Racer informed Petitioner that there was nothing for the two of them to discuss, and therefore, no need to meet.  (Id.)  Petitioner did not speak with Mr. Racer again until late December 2005.  (Id.)

---

[1] "At the time that these events took place, [Petitioner] had only lived in the United States for approximately five years."  (Pet'r Decl. in Supp. of § 2255 Mot. ("Pet'r Decl.") ¶ 12.)  Although Petitioner maintains permanent resident status, his wife and children are American citizens. (Pet'r Decl. ¶ 20; see also Pet'r Mem. in Supp. of Writ of Habeas Corpus ("Pet'r Mem.") 5 n.2.)

During their second meeting, Mr. Racer informed Petitioner about a plea agreement that Mr. Racer had negotiated with the Government. (Id.) The terms of the agreement required Petitioner to plead guilty to the bribery charge, and serve a fifteen-months sentence in exchange for the Government dropping the conspiracy charge. (Id.) Mr. Racer advised Petitioner that his only recourse was to plead guilty, and that by pleading he would avoid a fifteen-year sentence. (Id.) Mr. Racer said nothing of the immigration consequences related to Petitioner's guilty plea. (Id.) Petitioner signed the plea agreement based on Mr. Racer's advice. (Id.)

At some point prior to Petitioner being sentenced,[2] Petitioner asked Mr. Racer specifically whether his plea of guilty to the bribery charge would affect his immigration status. (Petitioner also raised this issue during the sentencing hearing.) (Id. at ¶ 9.) Mr. Racer stated that because Petitioner was a resident alien, with a green card, he would not be subject to deportation when convicted. (Id.) Similarly, Mr. Racer stated that the charges against Petitioner were not charges for which he could be deported.[3] (Id. at ¶ 20.)

---

[2] It is unclear from the record the exact date that Petitioner asked Mr. Racer whether his guilty plea would affect his immigration status; however, it is clear that Petitioner posed these questions prior to both sentencing hearings, and that Mr. Racer was aware of Petitioner's concerns at the time he negotiated the plea agreement. (Pet'r Decl. ¶ 20; see also Section 2255 Petition Hr'g Tr. 7:12-8:4, 18:6-15, 32:8-12.)

[3] There are several types of crime that subject an alien to automatic deportation, pursuant to 8 U.S.C. § 1227(a)(2). The two types of crime most relevant to the case sub judice are crimes of moral turpitude and aggravated felonies. Id. §§ 1227(a)(2)(A)(i), (iii).

> Any alien . . . in and admitted to the United States shall, upon order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens . . . .
>
>     . . . .
>
>         . . . Any alien who is convicted of a crime of moral turpitude committed

3

On February 8, 2006, Petitioner pled guilty, and this Court accepted his guilty plea, to Count Two of the Indictment, which charges a violation of 18 U.S.C. § 201(b)(1).  (Plea Hr'g Tr. 6:8 and 24:5-6, Feb. 8. 2006.)  On June 14, 2006, this Court conducted the first of two sentencing hearings.  (See generally Sentencing Hr'g Tr. ("Sentencing Tr. 1"), June 14, 2006.)  During the initial hearing, Mr. Racer attempted to argue, in violation of the plea agreement, for a downward departure in Petitioner's sentence based on information Mr. Racer read in the pre-sentencing report.  (See Sentencing Tr. 1 3:15-20.)  Mr. Racer stated, on the record, that because he had failed to conduct discovery in this matter, Petitioner's minor role in the charged criminal enterprise was not readily apparent to him.[4]  (Id.)  This Court admonished Mr. Racer for such

---

> within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 245(j)) after the date of admission, and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable . . . .
>
>         . . . .
>
>         . . . Any alien who is convicted of an aggravated felony at any time after admission is deportable.

Id.  An aggravated felony includes "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  8 U.S.C. § 1101(a)(43)(M)(i).

Mr. Racer negotiated with the Government to include language in the plea agreement that would not trigger automatic deportation, pursuant to the aggravated felony provision in § 1227(a)(2)(A).  (See Pet'r Decl. Ex. C at 6) (stating that "[t]he parties agree to stipulate that the offense did not involve a fraud or deceit in which there was a loss to a victim.")  However, it appears that Mr. Racer was not aware that Petitioner would also be subject to automatic deportation if convicted of a crime of moral turpitude, and sentenced for a term exceeding one year.  (Section 2255 Petition Hr'g Tr. 8:5-21.)  He, therefore, failed to negotiate sufficiently with the Government so as to avoid subjecting Petitioner to this separate provision mandating automatic deportation.  (Id.)

[4] "MR. RACER:  I believe, your Honor, the Court has discretion, under the circumstances, to consider that, because the minor role did not really become apparent until the presentence report

admission, stating

> THE COURT:  No, no, no.  You don't get to say that because at the plea I asked you
> - - and, specifically, it's question number 15 on my plea allocution - - I asked you
> specifically, counselor, have you received sufficient discovery and information from
> the government to advise your client properly about this plea of guilty?  I've done it
> two or three, four hundred times, that's why I've memorized it.  And you said, yes.
> If we need to produce a transcript, I'll produce it.  Please don't say to me at the time
> of sentencing you did no discovery in this cause of action at the time of the plea.  On
> the record, you, as an officer of the Court, told me that you received sufficient
> discovery and information from the government to advise your client properly about
> this plea.

(Sentencing Tr. 1 3:21-4:10.)  Subsequently, Mr. Racer withdrew the motion.  (Id. at 8:1.)

Next, Mr. Racer argued that Petitioner should be subject to a two-point, rather than a

four-point, offense level enhancement, pursuant to Sentencing Guideline § 2C1.1(b)(2),[5] because

the value of the payment, or the benefit Petitioner received from the bribe was less than $10,000.

(Id. at 11:4-7.)  Mr. Racer relied on invoices that he could not authenticate for the Court.  This

Court gave Mr. Racer an opportunity to submit an affidavit confirming the authenticity of the

invoices, and adjourned the sentencing hearing.  (Id. at 16:6-19:17.)

---

was issued.  We didn't do any discovery in this matter. . . . "  (Sentencing Tr. 1 3:15-20.)

[5] Section 2C1.1(b)(2) of the Sentencing Guidelines provides that

> [i]f the value of the payment, the benefit received or to be received in return for the
> payment, the value of anything obtained or to be obtained by a public official or
> others acting with a public official, or the loss to the government from the offense,
> whichever is greatest, exceeded $5,000, increase by the number of levels from the
> table in § 2B.1 (Theft, Property Destruction, and Fraud) corresponding to that
> amount.

U.S. SENTENCING GUIDELINES MANUAL § 2C1.1(b)(2) (2007).  Section 2B.1(b) states that if the
loss is less than $5,000, there shall be no enhancement of the offense level.  Id. § 2B.1(b).  If,
however, the loss is greater than $5,000, but less than $10,000, there shall be a two-point
enhancement of the offense level.  Id.  If the loss is greater than $10,000, but less than $30,000,
the enhancement shall be four-points.  Id.

On June 19, 2006, this Court reconvened the sentencing hearing.  (See generally Sentencing Hr'g Tr. ("Sentencing Tr. 2"), June 19, 2006.)  During this hearing, Mr. Racer did not submit an affidavit swearing to the authenticity of the invoices.  Instead, he submitted additional invoices in an effort to demonstrate that the benefit of the bribe was less than $10,000.  This Court rejected Mr. Racer's argument.  (Sentencing Tr. 2 8:19-9:14.)

Next, Mr. Racer stated that other evidence existed offering proof that the benefit received was less than $10,000.  He claimed that there were cancelled checks reflecting the actual payments made.  (Sentencing Tr. 2 10:13-20.)  However, Mr. Racer failed to produce these documents at the hearing.  This Court ruled, after considering the Government's submissions and Mr. Racer's failure to submit contrary evidence, that the value of the bribe was more than $10,000, but less than $30,000.  A four-point enhancement was, therefore, appropriate.  (Id. at 8:19-9:14, 13:6-8.)

At the conclusion of the second hearing, this Court sentenced Petitioner to a term of fifteen months in the custody of the Bureau of Prisons, and a two-year period of supervised release.  (Id. at 26:3-8.)  Petitioner was also fined $5,000.  (Id. at 27:25-28:1)

After Petitioner was sentenced, he "received [] notification from the Bureau of Prisons that a detainer had been lodged against [him] by [] Immigration and Customs Enforcement [] . . . as [a] result of [his] conviction . . . ."  (Pet'r Decl. ¶ 21.)  On June 14, 2007, Petitioner filed a pro se petition to vacate, set aside, or correct the sentence, pursuant to 28 U.S.C. § 2255.  (See generally Pet. for Writ of Habeas Corpus.)  On July 20, 2007, Petitioner filed a declaration in support of his § 2255 Petition.  (See generally Pet'r Decl.)  Subsequently, Petitioner retained new counsel, Mr. Thomas E. Moseley, Esq., who filed a memorandum of law in support of the

6

Petition alleging that trial counsel:  1) failed to conduct adequate pre-trial discovery; 2) failed to present relevant evidence at sentencing; and 3) affirmatively misrepresented to Petitioner that he would suffer no deportation consequences as a result of his guilty plea.  (See generally Pet'r Mem.)

This Court heard oral argument on November 29, 2007.

## II.  STANDARD OF REVIEW

Section 2255 provides that

> [a] prisoner in custody under sentence of court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  "[A] motion to vacate [a] sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court."  United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980).  Unless it appears conclusively from the motion, files, and records that the petitioner is not entitled to relief, the district court must grant the petitioner an evidentiary hearing on the matter.  Id.

A writ of habeas corpus does not encompass all sentencing errors, and should not be used as a substitute for direct appeal.  See Reed v. Farley, 512 U.S. 339, 354 (1994); United States v. Addonizio, 442 U.S. 178, 184 (1979).  Where a prisoner fails "to raise his claim on direct review, the writ [of habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"  Reed, 512 U.S. at 354 (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).  "To show cause, a petitioner must

7

establish that 'some external impediment' prevented him from raising the claim," such as interference by officials, the unavailability of evidence at the time, or ineffective counsel. <u>Wise v. Fulcomer</u>, 958 F.2d 30, 34 (3d Cir. 1992) (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991)). "Prejudice exists where 'errors at trial . . . worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Wise</u>, 958 F.2d at 34 (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986)).

Alternatively, collateral relief is available, pursuant to § 2255, when the claimed error of law constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." <u>Addonizio</u>, 442 U.S. at 185. The error must present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974).

### III.  DISCUSSION

Petitioner claims that his guilty plea should be vacated because trial counsel affirmatively misrepresented the immigration consequences related to Petitioner's guilty plea.[6] Petitioner contends that "I would never have plead [sic] guilty if I knew that it would cause me to be deported from this country. . . . If I knew there was any chance of my deportation I would not have plead [sic] guilty."  (Pet'r Decl. ¶ 21.)

To establish a claim for ineffective assistance of counsel, a defendant must prove that:

---

[6] Petitioner also argues that trial counsel provided ineffective assistance of counsel because he failed to conduct adequate pre-trial discovery and present relevant evidence at sentencing.  (Pet'r Mem. at 4-10.)  This Court need not address Petitioner's other arguments independently because Mr. Moseley, Petitioner's current counsel, stated at oral argument on the pending motion that the claims regarding failure to conduct pre-trial discovery and failure to present relevant evidence at sentencing merely supplement Petitioner's ineffective assistance claim based on an affirmative misrepresentation of immigration consequences.  (Section 2255 Petition Hr'g Tr. 3:10-4:5.)

(1) counsel's performance fell below an objective standard of reasonableness; and (2) this deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  In evaluating the first prong, a court must determine "whether counsel's assistance was reasonable considering all the circumstances," including prevailing professional norms.  Id. at 687-688.  The court must be highly deferential, and must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance.  Id. at 689.

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court extended the Strickland standard to guilty plea challenges based on the ineffective assistance of counsel.  In this context, "the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence."  Hill, 474 U.S. at 58.  To satisfy the second prong of the test, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id. at 59.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

## A.     Trial Counsel's Performance Was Deficient

The Third Circuit has yet to decide whether a trial counsel's affirmative misrepresentation regarding the immigration consequences of a guilty plea falls below an objective standard of reasonableness, pursuant to the Strickland-Hill analysis.  United States v. Babalola, 248 F. App'x 409, 413 (3d Cir. 2007) ("It is an open question in this court whether counsel's error in advising a client regarding the collateral consequences of a guilty plea - - such as the effect of the plea on future immigration proceedings - - is fundamental to that conviction

such that it can constitute objectively unreasonable representation under the first prong of Strickland.").  This Court will seek guidance from other circuit courts of appeal.

The Constitution of the United States does not require defense counsel to inform an accused person of the collateral consequences of his guilty plea.  United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000) (quoting United States v. George, 869 F.2d 333, 337 (7th Cir. 1989) ("While the Sixth Amendment assures an accused of effective assistance of counsel in criminal prosecutions, this assurance does not extend to collateral aspects of the prosecution.")). Therefore, counsel is not ineffective when he or she fails to tell the defendant that his plea may result in deportation.  See United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989) ("We cannot say that counsel performed unreasonably in merely neglecting to inform [the defendant] that he might be subject to deportation or denied re-entry into the United States because of his guilty plea."); Santos v. Kolb, 880 F.2d 941, 945 (7th Cir. 1989), superseded by statute, Pub. L. No. 101-649, Title V, 505(b), 104 Stat. 5050, as recognized in Rodriguez v. United States, No. 92-3163, 1995 U.S. App. LEXIS 7920, at *3 (7th Cir. Apr. 6, 1995) ("The failure of petitioner's counsel to inform him of the immigration consequences of his guilty plea, however unfortunate it might be, simply does not deprive petitioner of the effective assistance of counsel guaranteed by the Constitution."); United States v. Fry, 322 F.3d 1198, 1200 (9th Cir. 2003) ("[C]ounsel's failure to advise a defendant of collateral immigration consequences of the criminal process does not violate the Sixth Amendment right to effective assistance of counsel."); Broomes v. Ashcroft, 358 F.3d 1251, 1257 (10th Cir. 2004) ("[D]eportation remains a collateral consequence of a criminal conviction, and counsel's failure to advise a criminal defendant of its possibility does not result in a Sixth Amendment deprivation."); but cf. United States v. Couto, 311 F.3d 179,

10

188-191 (2d Cir. 2002) (implying, in dicta, that because the 1996 amendments to the Immigration and Nationality Act make deportation a certainty for an alien convicted of an aggravated felony, trial counsel should fully inform the defendant of the consequences of a guilty plea).  While several courts have ruled that failure to advise a defendant of possible deportation consequences is insufficient to establish ineffective assistance of counsel, other courts have determined that when counsel affirmatively misrepresents to a defendant that there will be no deportation consequences to a guilty plea, such statements can constitute ineffective assistance of counsel.  See e.g., Couto, 311 F.3d 179.

In Couto, a case substantially similar to the case sub judice, the defendant, a citizen of Brazil, was charged with bribery, and conspiracy to commit bribery, of an immigration official. 311 F.3d at 182.  The defendant retained a criminal defense attorney who met with her initially for approximately fifteen minutes.  Id. at 182-83.  The defendant did not hear from her attorney for four months.  Id. at 183.  When she met again with defense counsel, counsel informed her of a plea agreement he had negotiated with the government.  Id.  Counsel advised the defendant that if she did not accept the plea agreement, she would likely be found guilty and face jail time.  Id. On the other hand, counsel stated that if the defendant accepted the plea agreement, she would avoid jail.  Id.  Counsel also "assured [the defendant] that they could deal with her immigration problem after the guilty plea, and said there were many things that could be done to prevent [the defendant] from being deported, including asking the judge for a letter recommending against deportation."  Id.  On the advice of her attorney, the defendant accepted the terms of the plea agreement.  Id.

During the plea hearing, counsel did not make any statements concerning the immigration

11

consequences of the defendant's guilty plea.  Id.  "More specifically, no one informed [the

d]efendant that, because the 1996 amendments to the Immigration and Nationality Act eliminated

all discretion as to deportation of non-citizens convicted of aggravated felonies, her plea of guilty

meant virtually automatic, unavoidable deportation."  Id. at 183-84.

Prior to sentencing, the defendant obtained new counsel and moved to withdraw her

guilty plea arguing, inter alia, that her original counsel made affirmative misrepresentations

regarding the affect of a guilty plea on her immigration status.  Id. at 184.  The district court

denied the defendant's motion holding, among other things, that defense counsel's failure to

inform the defendant of the consequences of a guilty plea does not constitute ineffective

assistance of counsel.  Id. at 185.

The Court of Appeals for the Second Circuit reversed and held that defense counsel's

*affirmative misrepresentation* regarding immigration consequences constitutes ineffective

assistance of counsel.  Id. at 188 ("We believe that an affirmative misrepresentation by counsel

as to the deportation consequences of a guilty plea is today objectively unreasonable.  We

therefore hold that such a misrepresentation meets the first prong of the Strickland test.  It

follows that if the defendant can also establish that 'there is a reasonable probability that, but for

counsel's errors, she would not have pleaded guilty and would have insisted on going to trial,'

then, the guilty plea is invalid.  The facts of the current case demonstrate that probability beyond

peradventure.") (internal citation omitted).

Other courts have adopted this reasoning.  See e.g., United States v. Kwan, 407 F.3d

1005, 1015 (9th Cir. 2005) ("Where, as here, counsel has not merely failed to inform, but has

effectively misled, his client about the immigration consequences of a conviction, counsel's

performance is objectively unreasonable under contemporary standards for attorney competence."); United States v. Khalaf, 116 F. Supp. 2d 210, 215 (D. Mass 1999) (ADM) ("[Petitioner] alleges that prior to his plea, counsel told him that he would receive a [Judicial Recommendation Against Deportation] and that it would protect him against deportation, and therefore that his guilty plea would not result in deportation.  This was an affirmative misstatement by defense counsel to Petitioner. . . . [Counsel's] failure to read the statute and articulate the proper meaning to Petitioner is unreasonable under prevailing professional norms.").

Similarly, one court within this Circuit has found that an affirmative misrepresentation regarding deportation consequences is objectively unreasonable.  See United States v. Shaw, No. 03-6759 (JED), 2004 U.S. Dist. LEXIS 15942, at *35 (E.D. Pa. Aug. 11, 2004).  In Shaw, the defendant, a lawful permanent resident of the United States with eight children and a wife, all of whom are American citizens, was arrested and charged with participating in a stolen car ring.  Id. at *2-3.  The defendant pled guilty, pursuant to a cooperating plea agreement, and was sentenced to eighteen months of imprisonment.  Id. at *3.  Upon completion of his sentence, the defendant was taken into custody, pursuant to a petition for removal.  Id.  The defendant obtained new counsel and filed a motion arguing that he had been deprived of effective assistance of counsel, id. at *4, because his original attorney assured him that "there would be no immigration consequences of a guilty plea, a statement counsel repeated to the Court at the change of plea hearing," id. at *28.  "[T]he [c]ourt conclude[d] that counsel's advice that a plea would have no adverse or permanent immigration consequences was objectively unreasonable."  Id.  After also finding that the "defendant [had] established a reasonable probability that but for counsel's

objectively unreasonable advice the result of the proceeding would have been different[,]" <u>id.</u> at *34, the court vacated the defendant's sentence and scheduled a hearing for re-sentencing, <u>id.</u> at *36.

This Court agrees with the reasoning of the <u>Couto</u> and <u>Shaw</u> courts, as well as other courts that have reached the same conclusion.[7]  Mr. Racer advised Petitioner that he would not be

---

[7] The American Bar Association's Standards for Criminal Justice, and legislation enacted by numerous states supports this conclusion.  First, the Standards for Criminal Justice provide that

> [t]o aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and *address considerations deemed important by . . . the defendant in reaching a decision . . . .*
>
> . . . .
>
> . . . To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible *collateral consequences* that might ensue from entry of the contemplated plea.

ABA STANDARDS FOR CRIMINAL JUSTICE, PLEAS OF GUILTY 14-3.2(b), (f) (3d ed. 1999) (emphasis added).  The commentary on Standard 14-3.2(f) adds that

> counsel should be familiar with the basic immigration consequences that flow from different types of guilty pleas, and should keep this in mind in investigating law and fact and advising the client.

<u>Id.</u> at 14-3.2(f) cmt.  This Standard demonstrates that a defense counsel has the responsibility of knowing and conveying accurate information regarding the collateral consequences of a defendant's guilty plea, including immigration consequences.  Mr. Racer violated his professional responsibility when he failed to acquire this information, and affirmatively misrepresented to Petitioner the effect his guilty plea would have on his immigration status.  While "breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel," <u>Nix v. Whiteside</u>, 475 U.S. 157, 165 (1986), the standards provide guidance as to what behavior is reasonable.

Second, many states have adopted legislation or rules of criminal procedure requiring the trial judge and/or counsel to inform the defendant of any immigration consequences related to a guilty plea.  <u>See</u> <u>e.g.,</u> CAL. PEN. CODE § 1016.5(a) (2007) (requiring the court, prior to accepting a guilty plea, to state to the defendant, "[i]f you are not a citizen, you are hereby advised that

subject to deportation if he pled guilty.  In fact, Mr. Racer told Petitioner "not to worry, this is not a big deal."  (Pet'r Decl. ¶ 10.)  Mr. Racer also informed Petitioner that because he was a resident alien, with a green card, he would not be subject to deportation when convicted.  (Id. at ¶ 9.)  In any event, Mr. Racer stated that the charges against Petitioner were not charges for which Petitioner could be deported.  (Id. at ¶ 20.)

Despite Mr. Racer's assurances, Petitioner's conviction subjected him to automatic deportation, pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).[8]  Couto, 311 F.3d at 189-90 (stating that as a result of the 1996 amendments to the Immigration and Nationality Act, an alien convicted of a crime specified in 8 U.S.C. § 1227(a)(2) "is automatically subject to removal and no one - - not the judge, the INS, nor even the United States Attorney General - - has any discretion to stop the deportation. . . . Instead, deportation today is an essentially automatic, and unavoidable consequence . . . .").

---

conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."); see also CONN. GEN. STAT. § 54-1j (2007); FLA. R. CRIM. P. 3.172(c)(8) (2007); HA. REV. STAT. § 802E-2 (2007); MD. RULE 4-242(e) (2007); MINN. R. CRIM. P. 15.01(10)(d) (2008); N.C. GEN. STAT. § 15A-1022(a)(7) (2007); R.I. GEN. LAWS § 12-12-22(a)-(b) (2007); REV. CODE WASH. § 10.40.200(2) (2008).  These legislative advances lend support to the reasoning that counsel's affirmative misrepresentation concerning the consequences of a guilty plea on a defendant's immigration status is objectively unreasonable.

[8] An alien convicted of a crime of moral turpitude, and sentenced to a term of imprisonment of one year or more, is subject to automatic deportation.  See supra note 3, at 6.  "Offering a bribe under [18 U.S.C. § 201] is a crime involving moral turpitude, for a corrupt mind is an essential element of the offense."  Okabe v. INS, 671 F.2d 863, 865 (5th Cir. 1982).  Petitioner's conviction of bribery of a public official constitutes a crime of moral turpitude.  In addition, the crime occurred within five years of Petitioner's admission to the United States.  (Pet'r Decl. ¶ 21.)  Therefore, when this Court sentenced Petitioner to fifteen months of imprisonment, the final factor of § 1227(a)(2)(A)(i) was satisfied, and Petitioner was subject to automatic deportation, pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).

Mr. Racer's affirmative misrepresentation of the possible deportation consequences of Petitioner's guilty plea was objectively unreasonable.  Petitioner has satisfied the first Strickland-Hill prong.

### B.    Defendant was Prejudiced

The Third Circuit has interpreted the Strickland-Hill prejudice standard to require Petitioner to show a reasonable probability that:  1) but for Mr. Racer's errors, Petitioner would not have pled guilty and would have insisted on proceeding to trial; and 2) if he had not pled guilty, he would not have been convicted at trial.  Babalola, 248 F. App'x at 413.  "This standard is not a stringent one."  Thomas v. Varner, 428 F.3d 491, 502 (3d Cir. 2005).  Petitioner is not required to show "that counsel's deficient performance 'more likely than not altered the outcome in the case' - rather, he must show only 'a probability sufficient to undermine the confidence in the outcome.'"  Id. (quoting Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (citing Strickland, 466 U.S. at 693-94)).  In other words, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.  This Court finds that Petitioner has met his burden.

First, Petitioner alleges that "I would never have plead [sic] guilty if I knew that it would cause me to be deported from this country.  I believed Mr. Racer when he told me it would not happen.  If I knew there was any chance of my deportation I would not have plead [sic] guilty." (Pet'r Decl. ¶ 21.)  Similarly, Petitioner states that his wife and children live in the United States, and he owns a successful business in Linden, New Jersey, all of which would be affected by his deportation.  (Id. at ¶ 20) ("This issue was of enormous significance to me.  My wife and children are all American citizens.  I have worked hard to build a life for my family in this country.  I have

a company, Statewide Transportation, Inc. in Linden, New Jersey.  It employs 27 full time employees.  I have built a good reputation among shipping companies and freight forwarders.  If I were to be deported, the consequences would be catastrophic.  I would be separated from my wife and children, my business would have to be closed, everything that I have ever worked for would be lost.")  This Court finds that these factors establish sufficiently the first part of the prejudice prong.

The government argues, however, that this case is analogous to <u>Evola v. Carbone</u>, 365 F. Supp. 2d 592, 600-601 (D.N.J. 2005) ("Evola I"), <u>aff'd</u> 190 F. App'x 171 (3d Cir. 2006) ("Evola II").  (<u>See</u> Gov't Answer to Pet. for Writ of Habeas Corpus 14-16; <u>see also</u> Section 2255 Petition Hr'g Tr. 27:10-31:11.)  In <u>Evola I</u>, the district court stated that the defendant "has not satisfied the Court that there is a reasonable probability he would have insisted on going to trial had he known of the immigration consequences of his guilty plea."  365 F. Supp. 2d at 601.  The court reached this decision based on the absence of a claim of innocence by the defendant,[9] the overwhelming evidence against the defendant,[10] and the benefit the defendant received by pleading guilty.[11]  However, this case is easily distinguishable.  Petitioner's own statements

---

[9] "Yet, nowhere in the record does Evola claim his innocence."  <u>Evola I</u>, 365 F. Supp. 2d at 601. In fact, in response to the question "Why did you decide to enter this plea of guilty, because in fact you are guilty or for some other reason?," the defendant stated, "No, because I am guilty." <u>Id.</u>

[10] The defendant "faced a 23-count indictment with eleven co-defendants as part of a conspiracy to distribute narcotics."  <u>Evola I</u>, 365 F. Supp. 2d at 601.  In addition, "all eleven of [the defendant's] co-defendants had already pled guilty and were available to testify against him." <u>Evola II</u>, 190 F. App'x at 176.

[11] "[T]he government dismissed Count I which [alone] carried a significantly greater sentence than the five years probation that [the defendant] received."  <u>Evola I</u>, 365 F. Supp. 2d at 601.

reveal that he was reluctant to admit guilt, but felt compelled to do so in order to avoid a fifteen

year sentence.[12]  (Pet'r Decl. ¶ 19) (Petitioner stated, "I tried to explain to the Court that I did not

believe that I was guilty of the crime of bribery; that I had not intended to commit a crime.  Mr.

_____

[12]

> THE DEFENDANT:  Yes, sir, your Honor.  I heard what Ms. Malliet said, and I
> don't remember that, ever talking to the customer that I did.  The bookings are mine,
> and I can't deal with the steamship.  I don't have authorization, I'm only the trucking
> company, and I'm allowed to go inside the terminal because to pick up the container
> to deliver from point A to point B.  *And I had nothing to do.*
>
> I'm 33 years old and - - excuse me.  I have to be responsible for the things I'm doing,
> but honestly, when I give to the custom border protection officer $2,000, I didn't
> mean that I was - - *I didn't realize I was doing the crime, honestly*, because we were
> talking to him, the guy wanted to help me out with the load.
>
> THE COURT:  Look, if you didn't know you were doing the crime, talk to your
> lawyer, you should withdraw your plea and go to trial.
>
> Now is not the time to say that you didn't know.  If you didn't know, withdraw your -
> - I advise you to talk to your lawyer about it and withdraw your plea now and go to
> trial.
>
> . . . .
>
> THE DEFENDANT:  *What I'm trying to say is it's - - if I would know it's a crime,
> I would never go there.*
>
> THE COURT:  We're not having a conversation about this.  I'm directing you to talk
> to your lawyer about it.  I'm going off of the bench now, and when I come back,
> you're either going to withdraw your plea or you're going to withdraw the statements
> that you've made about not knowing that you committed a crime.
>
> . . . .
>
> THE DEFENDANT:  I'm sorry, your Honor, in front of you, in front of the people
> that had been suffering because of my stupidity, in front of the United States of
> America.  And I did the mistake, the biggest mistake in my life, which I apologize,
> and I'm ready to do whatever your Honor decide [sic] me to do.

(Sentencing Tr. 2 19:13-22:9-13) (emphasis added.)

Racer told me that I had to tell the Judge that I was guilty or I would go to jail for 15 years.")

This Court acknowledged Petitioner's reluctance, and stated that during the sentencing hearing

Petitioner "expressed himself in a manner that led [this Court] to believe that he believed he was

innocent . . . ."  (Section 2255 Petition Hr'g Tr. 5:16-18.)  Mr. Moseley confirmed that Petitioner

believed he was innocent, but agreed to the guilty plea in order to avoid a lengthy sentence, and

that Petitioner had no concerns regarding deportation because Mr. Racer assured him that no

such consequences would result from his guilty plea.  (Id. at 6:8-25.)

Next, there is significantly less evidence against Petitioner than that against the defendant

in Evola.  See Evola II, 190 F. App'x at 175-176.  Finally, and unlike the facts before this Court,

Evola received a benefit to pleading guilty that outweighed his desire not to be deported.  Evola I,

365 F. Supp. 2d at 601.  Here, Petitioner faced twenty-one to twenty-six months of imprisonment

if he had proceeded to trial.  (Section 2255 Petition Hr'g Tr. 24:10-11.)  As a result of accepting

the plea agreement, Petitioner was sentenced to fifteen months of imprisonment.  (Id. at 24:12.)

While any sentencing reduction is a benefit to the defendant, given the circumstances

surrounding this case, this Court believes that it is likely that Petitioner would have taken his

chances at trial because he faced only six to twelve months more than the sentence he received.

(Id. at 24:12-14.)  Evola is inapposite.

Second, this Court finds that there is a reasonable likelihood that Petitioner would not

have been sentenced in excess of one year for a single crime of moral turpitude, but for Mr.

Racer's ineffectiveness.  Mr. Racer did not conduct discovery in Petitioner's case.  (Sentencing

Tr. 1 3:15-20.)  As a result of this failure, Mr. Racer had no ability to argue effectively, before

this court, that Petitioner had a minor role in the bribery of a public official.  (Id. at 8:1.)  Mr.

19

Racer's lack of discovery also prevented him from admitting into evidence authenticated invoices or cancelled checks to illustrate that the value of the benefit received from the bribe was less than $10,000.  This evidence could have prevented a four-point enhancement of the offense level.[13] (Sentencing Tr. 2 8:19-10:20.)

Significantly, this information may have been enough to compel this Court to enter a sentence at a lower offense level, thereby reducing Petitioner's sentence to less than one year or, at minimum, have allowed Mr. Racer to negotiate a more favorable plea agreement with the Government.  Shaw, 2004 U.S. Dist. LEXIS 15942, at *34 ("Defendant could have negotiated with the government in such a way as to produce a sentence that would not have triggered the INA mandatory removal provisions.  Further, had defense counsel informed the Court of the immigration consequences . . . there is a reasonable probability the outcome of defendant's sentencing hearing would have been different.  Thus, defendant has satisfied the second prong of Strickland."); Kwan, 407 F.3d at 1017-18 ("Counsel never explored the option of renegotiating the plea agreement with the prosecution so as to avoid the deportation consequences.  Nor did counsel inform the sentencing judge that [the defendant] would almost certainly be deported if he was sentenced to a year or more in prison.").

These facts together show clear prejudice to Petitioner.  For example, Mr. Racer could have negotiated an agreement with the Government in which Petitioner "would [have] agree[d] to plead guilty to a customs offense . . . which would not be [considered] a crime of moral [turpitude.]" (Section 2255 Petition Hr'g Tr. 12:11-13.)  In that instance, this Court could have

---

[13] The record is not clear that discovery would have yielded this result.  What is clear, however, is that Mr. Racer's shortcomings regarding discovery did not allow these arguments to be made.

imposed the same sentence of fifteen months without subjecting Petitioner to automatic

deportation, because the crime would not be considered one of moral turpitude, pursuant to

§ 1227(a)(2)(A)(i).  On the other hand, Mr. Racer could have negotiated an agreement with the

Government in which Petitioner could have pled guilty to two smaller offenses, even if they were

considered crimes of moral turpitude, and imposed two consecutive sentences, each amounting to

terms of imprisonment for less than one year.  (Id. at 14:11-17) ("Perhaps the government would

be willing to consider [] allow[ing] [Petitioner] to plead guilty to other crimes, which would not

give rise to deportation, and he could be sentenced to the same amount of time, the Court

consecutively sentences him if - - it would need to be a crime punishable for less than a year.  He

could plead guilty to two of those, and you could sentence him to 15 months, or time served.")

This Court finds that there is a reasonable likelihood that the Government would have

considered such agreement because it considered, and ultimately approved of, another provision

that would prevent Petitioner from being subject to automatic deportation.  (Pet'r Decl. Ex. C at

6.)  Petitioner has proved sufficiently that he was prejudiced by Mr. Racer's ineffectiveness.

## IV. CONCLUSION

For the foregoing reasons, Nathan Sasonov's Petition for Writ of Habeas Corpus,

pursuant to 28 U.S.C. § 2255, is granted, and Petitioner's guilty plea is vacated.

Dated:  September 9, 2008

                           S/Joseph A. Greenaway, Jr.
                           JOSEPH A. GREENAWAY, JR., U.S.D.J.